# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services (OIG-HHS) (collectively, the "United States"), and Greenway Health, LLC ("Greenway") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.  Greenway is a privately owned vendor of health information technology (HIT) including integrated electronic health record (EHR) software which is incorporated in Delaware and headquartered in Tampa, Florida.

B.  On or around February 6, 2019, the United States filed an action in the United States District Court of Vermont captioned *United States v. Greenway Health, LLC* (the "Civil Action").

C.  The United States contends that Greenway caused claims for incentive payments to be submitted to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"), and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid") based on the use of Greenway's EHR software.

D.  The United States contends that it has certain civil claims against Greenway for causing healthcare providers to submit false claims to Medicare and Medicaid for federal incentive payments. As set forth in the United States' Complaint, the United States contends the following (the "Covered Conduct"):

(1)  Greenway falsely represented to its Office of National Coordinator Authorized Certification Body (ONC-ACB) that its EHR software product known as Prime Suite complied with all applicable requirements for certification to the 2014 Edition certification criteria under

ONC's Health IT Certification Program, when in fact Greenway knew that Prime Suite as used by healthcare providers would not satisfy all such requirements. Greenway falsely represented that Prime Suite met the 2014 Edition certification criteria because use of certified software is a requirement for eligible healthcare providers to receive incentive payments under the Centers for Medicare & Medicaid Services (CMS) Electronic Health Record Incentive Program (the "Meaningful Use Program.") Consequently, Greenway knowingly caused eligible healthcare providers who used Prime Suite to falsely attest to compliance with CMS requirements necessary to receive incentive payments during the reporting periods for 2014 through 2017.

(2) Greenway knowingly caused Prime Suite users to report inaccurate information regarding Meaningful Use objectives and measures in attestations submitted to CMS and state Medicaid agencies for purposes of obtaining Meaningful Use incentive payments. Specifically, Stage 1 of the Meaningful Use Program required, among other things, that during the applicable reporting period, a healthcare provider must show that he/she provided clinical summaries to patients for more than 50 percent of all office visits within three business days. 42 C.F.R. § 495.6(d)(13)(ii) (the "clinical summaries measure"). Greenway caused Prime Suite users to report the number of unique patient visits at which clinical summaries were provided, as opposed to the number of office visits at which clinical summaries were provided, resulting in a number of Prime Suite users who had not met the 50 percent threshold improperly attesting that they satisfied the regulatory criteria to receive incentive payments during the reporting periods for 2011 through 2013.

(3) Between January 1, 2011 and December 31, 2017, Greenway provided improper remuneration to certain healthcare providers to continue using Prime Suite and/or to recommend Prime Suite to other users, in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b.

E.  This Agreement is neither an admission of liability by Greenway nor a concession by the United States that its claims are not well founded. Greenway denies the United States' allegations in Paragraph D and in the Complaint.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Greenway shall pay to the United States 57.25 million dollars ($57,250,000.00) ("Settlement Amount"), of which 28 million dollars ($28,000,000.00) is restitution, with $19,083,333.33 due no later than thirty (30) days after the Effective Date of this Agreement, and the remaining $38,166,666.67 due in accordance with the payment schedule attached hereto as Exhibit A ("Payment Schedule"), by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice. Interest shall accrue at the Medicare Trust Fund Rate of 3% per annum from December 15, 2018, and continuing until and including the day of the full and final satisfaction of the Settlement Amount. The entire balance of the Settlement Amount, or any portion thereof, plus any interest on the principal as of the date of any prepayment, may be prepaid without penalty.

2. Subject to the exceptions in Paragraph 4 (concerning excluded claims) below, and conditioned upon Greenway's full payment of the Settlement Amount, the United States releases Greenway, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners, including, and as well as, Lightning Acquisition, LLC, Lightning Intermediate Holdings, LLC, Lightning Holdings, LLC, VEPF IV AIV I, L.P., Vista Equity Partners Fund IV GP, LLC, VEPF IV Co-Invest 2 GP, LLC, VEPF IV Co-Invest 2, L.P., VEPF IV Co-Invest 2-B Splitter, L.P.,

Vista Equity Partners Management LLC, and Vista Consulting Group LLC; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, 0.45(d); or the common law theories of payment by mistake, unjust enrichment, and fraud.

    3.    OIG-HHS Specific Provisions:

        a.    In consideration of the obligations of Greenway in this Agreement and the Corporate Integrity Agreement (CIA) entered into between OIG-HHS and Greenway, and conditioned upon Greenway's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Greenway under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 4 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Greenway from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 4, below.

b.   In the event that Greenway fails to pay any amount as provided in Paragraph 1, above, within 10 business days of the date on which such payment is due, Greenway shall be in default of its payment obligations ("Default"). In the event of such Default, OIG-HHS may exclude Greenway from participating in all Federal health care programs until Greenway pays the Settlement Amount and accrued interest as set forth in Paragraph 1 and Exhibit A ("Payment Schedule"). OIG-HHS will provide written notice of any such exclusion to Greenway. Greenway waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Greenway wishes to apply for reinstatement, Greenway must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Greenway will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

4.   Notwithstanding the releases given in paragraphs 2 and 3 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a.   Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.   Any criminal liability;

    c.   Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d.   Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.   Any liability based upon obligations created by this Agreement;

    f.   Any liability of individuals;

  g.  Any liability for failure to deliver goods or services due; and

  h.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

5. Greenway waives and shall not assert any defenses Greenway may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

6. Greenway fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Greenway has asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

7. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Greenway agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

8. Greenway agrees to the following:

  a.  <u>Unallowable Costs Defined</u>:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social

6

Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Greenway, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement and any related criminal agreement;

(2) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3) Greenway's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement and any related criminal agreement;

(5) the payment Greenway makes to the United States pursuant to this Agreement; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 8.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Greenway.

      b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Greenway, and Greenway shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Greenway or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Greenway further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Greenway or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs.  Greenway agrees that the United States, at a minimum, shall be entitled to recoup from Greenway any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by Greenway or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this

Paragraph) on Greenway or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

       d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Greenway's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

    9.    Greenway agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Greenway shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Greenway further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged (and not otherwise protected by the work product doctrine) documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

    10.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 2 and 3, above, and Paragraph 11 (waiver for beneficiaries paragraph), below.

    11.    Greenway agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

    12.    Upon receipt of the first payment described in Paragraph 1, above, the United States shall promptly sign and file in the Civil Action a Notice of Dismissal of the Civil Action

pursuant to Rule 41(a)(1)(A)(i), subject to the terms of this settlement. The dismissal shall be with prejudice to the United States as to the Covered Conduct. Any remaining claims in the action shall be dismissed without prejudice as to the United States.

13. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

15. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Vermont. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

17. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19. This Agreement is binding on Greenway's successors, transferees, heirs, and assigns.

20. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

21. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 2-6-19        BY: _____
                         OWEN FOSTER
                         NIKOLAS KEREST
                         Assistant United States Attorneys
                         United States Attorney's Office
                         District of Vermont

DATED: 2-6-19        BY: _____
                         KELLEY HAUSER
                         EDWARD CROOKE
                         Commercial Litigation Branch
                         Civil Division
                         United States Department of Justice

DATED: _____     BY: _____
                         LISA M. RE
                         Assistant Inspector General for Legal Affairs
                         Office of Counsel to the Inspector General
                         Office of Inspector General
                         United States Department of Health and Human Services

## THE UNITED STATES OF AMERICA

DATED: _____  BY: _____

OWEN FOSTER
NIKOLAS KEREST
Assistant United States Attorneys
United States Attorney's Office
District of Vermont


DATED: _____  BY: _____

KELLEY HAUSER
EDWARD CROOKE
Commercial Litigation Branch
Civil Division
United States Department of Justice


DATED: 2/5/19  BY: *Greg Demske for LMR*

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

**DEFENDANT GREENWAY HEALTH, LLC**

DATED: 2/4/19    BY: _____
RICHARD ATKIN, CEO
Greenway Health, LLC


DATED: 2/4/19    BY: _____
ADAM P. SCHWARTZ
JOSEPH W. SWANSON
Counsel for Greenway Health, LLC


DATED: 2/4/19    BY: _____
GREGORY KEHOE
Counsel for Greenway Health, LLC

13

**Settlement Agreement between the United States and Defendant Greenway Health, LLC**

**EXHIBIT A**
**(Payment Schedule)**

| Due Date | Payment |
|---|---|
| No later than six months after the Effective Date of this Agreement | $19,083,333.33 plus accrued interest |
| No later than twelve months after the Effective Date of this Agreement | $19,083,333.34 plus accrued interest |